Robert L. BELL, Sr., Plaintiff–Appellant,

v.

SAFETY GROOVING & GRINDING, LP, Defendant–Appellee.

No. 03–3902.

United States Court of Appeals, Sixth Circuit.

Aug. 24, 2004.

Elizabeth H. Doucet, Columbus, OH, for Plaintiff–Appellant.

William V. Beach, Robison, Curphey & O'Connell, Toledo, OH, for Defendant–Appellee.

Before KENNEDY, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge.

Plaintiff–Appellant Robert Bell challenges the district court's grant of summary judgment in favor of his former employer, Safety Grooving & Grinding, LP, on his claims of discrimination and retaliation under 42 U.S.C. § 2000e. Bell contends that he is entitled to the protections of Title VII because (1) his employer failed to recall him after a layoff due to his romantic relationship with Sandra Fetty, who filed an EEOC discrimination charge against Safety; and (2) his alleged opposition to Safety's purported discriminatory treatment of Fetty. Because Bell failed to state a cognizable claim under Title VII's discrimination and retaliation provisions, we affirm the district court's judgment.

Safety, a road surface grooving and grinding contractor, first employed Bell, a white male, as a broom operator for a few months in 1993. Bell quit but returned to work for Safety as a grinder operator on a yearly, seasonal basis from the summer of 1995 until the summer of 2000.

In the summer of 1999, Bell and Fetty began a romantic relationship and lived together during the events forming the basis of Bell's lawsuit. Early in the 2000 work season, Safety hired Fetty on a temporary basis to move traffic control barrels on a job in Michigan. The temporary work arrangement lasted just a few weeks. Bell claims he then complained to co-workers about Safety's decision to have its full-time, male employees move traffic barrels for overtime pay when Fetty could do the same work for less money.

Fetty filed a gender discrimination charge against Safety with the EEOC in June of 2000. Bell alleges that when his supervisor told him to ask Fetty to "back off" (without referring specifically to the EEOC charge), he responded that he would not, telling the supervisor to relay the message to Fetty himself. Bell also

claims that a Safety representative saw him accompany Fetty to a mediation relating to her EEOC charge. Bell alleges that his association with Fetty—who claimed discriminatory treatment by Safety—prompted Safety's adverse employment actions against him including decreasing his overtime and declining to rehire him when recalling other crew members after a seasonal layoff.

In August 2000, Bell filed a charge with the EEOC claiming that Safety's failure to rehire him constituted retaliation for Fetty's EEOC charge. After the EEOC issued a right-to-sue letter, Bell brought this action, alleging both a retaliation and a discrimination claim under Title VII plus a state law claim for wrongful termination in breach of public policy. The district court granted Safety's motion for summary judgment on all causes of action, and Bell appeals only the grant of summary judgment on his Title VII claims.

## II

This court reviews the district court's grant of summary judgment de novo, employing the same legal standard the district court applied. *Standard Constr. Co. v. Maryland Cas. Co.*, 359 F.3d 846, 849 (6th Cir.2004).

### A. 42 U.S.C. § 2000e–2(a)

■ Bell argues that Safety's alleged discrimination against him because of his association with Fetty—a member of a protected class who exercised her rights under Title VII by filing an EEOC charge—entitles him to Title VII protection. We affirm the district court's rejection of Bell's claim.

This court has found association with a protected party to be relevant under § 2000e–2(a) in just two situations; neither avails Bell's Title VII claim. In *Tetro v. Elliott Popham Pontiac, Olsmobile,*

*Buick, & GMC Trucks, Inc.,* the court reasoned that "a white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child." 173 F.3d 988, 994 (6th Cir.1999). The white employee was protected under Title VII not simply because of his relationship to his biracial child but because this relationship made the employee's own race the basis of his employer's discrimination, violating Title VII's prohibition against discrimination on the basis of race. *Id.* at 994–95. Bell, meanwhile, is claiming discrimination based solely on his relationship with his girlfriend, an association that—unlike the plaintiff's relationship with his child in *Tetro*—does not affect Bell's own Title VII status. And in *Johnson v. University of Cincinnati*, the court held that the plaintiff, a university administrator, stated a claim of Title VII discrimination not because of his status as an African–American but because of his advocacy on behalf of minorities and women. 215 F.3d 561, 575 (6th Cir.2000). We do not view Bell's actions on behalf of Fetty as analogous to the significant advocacy engaged in by the plaintiff in *Johnson.* Bell discussed neither Fetty's specific discrimination charge nor the general subject of sexual discrimination with Safety management. Moreover, Bell testified that he "didn't think [Fetty's treatment] was fair" but that he "didn't make a big issue out of it, not with anybody [at Safety]." At most, Bell complained to people at Safety about the company's business decision to have its full-time, male employees move traffic barrels instead of having Fetty move them. As he himself put it, "It was a labor issue with us men. It was not a discriminatory [sic] with us men."

Accordingly, Bell has not demonstrated that he is entitled to protection under

§ 2000e–2(a), and we affirm the district court's grant of summary judgment on this claim.

### B.   42 U.S.C. § 2000e–3

Bell also maintains that Title VII protects him from retaliation due to his opposition to Safety's allegedly discriminatory treatment of Fetty.   We disagree.

The Sixth Circuit's precedent demands active, consistent "opposing" activities to warrant § 2000e–3(a) protection against retaliation.   *Compare Johnson*, 215 F.3d at 579–80 (holding that plaintiff, who sent numerous letters to his employer objecting to its discriminatory hiring practices "as a whole," engaged in opposing conduct under § 2000e–3(a)) *with Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir.1989) (ruling that plaintiff who sent only one letter contesting a single decision to his employer's human resources department did not engage in opposing activities under § 2000e–3(a)).

As explained above, Bell's comments about Fetty were more critical of Safety's actions as a "labor issue" rather than as a discriminatory practice.   As such, Bell's complaints fall short of "opposing" activities that § 2000e–3(a) protects from retaliation.   We thus affirm the district court's holding that Bell failed to state a claim of retaliation under Title VII.

### III

We accordingly affirm the district court's grant of summary judgment in favor of defendant Safety Grooving & Grinding, LP.